## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX CICCOTELLI, | ) **COMPLAINT FOR VIOLATION OF THE** |
| | ) **SECURITIES EXCHANGE ACT OF 1934** |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| ZENDESK, INC., ARCHANA AGRAWAL, | ) |
| CARL BASS, MICHAEL CURTIS, MICHAEL | ) |
| FRANDSEN, BRANDON GAYLE, STEVE | ) |
| JOHNSON, HILARIE KOPLOW-MCADAMS, | ) |
| RONALD PASEK, MIKKEL SVANE, and | ) |
| THOMAS SZKUTAK, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      On June 24, 2022, Zendesk, Inc. ("Zendesk" or the "Company") announced that it will be acquired by affiliates of Permira and Hellman & Friedman LLC (the "Proposed Transaction").

2.      On June 24, 2022, Zendesk's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a merger agreement (the "Merger Agreement") with Zoro BidCo, Inc. and Zoro Merger Sub, Inc.  Pursuant to the terms of the Merger Agreement, Zendesk shareholders will receive $77.50 in cash for each Zendesk share they own.

3.      On July 25, 2022, defendants filed a proxy statement (the "Proxy Statement") with the U.S. Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

<strong>JURISDICTION AND VENUE</strong>

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

<strong>THE PARTIES</strong>

8.      Plaintiff is and has been continuously throughout all times relevant hereto the owner of Zendesk common stock.

9.      Defendant Zendesk is a Delaware corporation and a party to the Merger Agreement. Zendesk's common stock is traded on the NYSE, which is headquartered in New York, NY, under the ticker symbol "ZEN."

10.     Defendant Archana Agrawal is a director of the Company.

11.     Defendant Carl Bass is a director of the Company.

12.     Defendant Michael J. Curtis is a director of the Company.

13.     Defendant Michael L. Frandsen is a director of the Company.

14.     Defendant Brandon Gayle is a director of the Company.

15.     Defendant Steve Johnson is a director of the Company.

16.     Defendant Hilarie Koplow-McAdams is a director of the Company.

17.     Defendant Mikkel A. Svane is a director, Chairman of the Board, and Chief Executive Officer of the Company.

18.     Defendant Thomas Szkutak is a director of the Company.

19.     Defendant Ronald Paskek is a director of the Company.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

21.     Zendesk is a service-first customer relationship management company, built to give organizations of all sizes, in every industry, the ability to deliver a transparent, responsive, and empowering customer experience.

22.     On June 24, 2022, Zendesk's Board caused the Company to enter into the Merger Agreement.

23.     The press release announcing the Proposed Transaction provides as follows:

Zendesk, Inc. (NYSE: ZEN) today announced it has entered into a definitive agreement to be acquired by an investor group led by leading global investment firms Permira and Hellman & Friedman LLC ("H&F") in an all-cash transaction that values Zendesk at approximately $10.2 billion. Under the terms of this agreement, Zendesk shareholders will receive $77.50 per share. The offer represents a premium of approximately 34% over Zendesk's closing stock price on June 23, 2022, the last full trading day prior to this announcement.

"This is the start of a new chapter for Zendesk with partners that are aligned with the strength of our agile products and talented team, and are committed to providing the resources and expertise to continue our growth trajectory," said Mikkel Svane, founder, chairman and CEO, Zendesk. "With Hellman & Friedman and Permira's support, we'll continue to execute on our long-term strategy with our customers as our top priority, taking full advantage of the opportunity we see to help businesses

navigate the ever changing expectations and demands of their customers."

"The Board conducted an extensive strategic review over a three month period, receiving an actionable offer from Hellman & Friedman and Permira after the termination of our formal process," said Carl Bass, lead independent director, Zendesk. "This transaction provides certainty of value for our shareholders at a significant premium to Zendesk's trading price. The extensive strategic review process included the evaluation of both standalone and transactional alternatives and considered a range of factors including current and anticipated market conditions, business momentum and long-term outlook. During this period, we also worked constructively with major shareholders. The Board concluded that this transaction was the best alternative and the Board voted unanimously to support this transaction."

"Zendesk has reimagined customer service software and empowers businesses to transform how they communicate with their customers in an increasingly digital world. We believe Zendesk is uniquely positioned to enable meaningful interactions and deliver compelling business outcomes across any channel," said Ryan Lanpher, Partner at Permira. "We look forward to partnering with Zendesk's management team and talented employees to help them accelerate product innovation and achieve their growth ambitions," added Brian Ruder, Partner and Co-Head of Technology at Permira.

"Over the past 15 years, Zendesk has revolutionized how companies serve their customers and has become a leading platform within the customer experience ecosystem. We deeply believe in the company's growth opportunity as it continues to help businesses across the world delight their customers," said Tarim Wasim, Partner at Hellman & Friedman. "We see tremendous value in Zendesk's platform and ability to grow at scale. Its intuitive yet powerful offering serves over 100,000 companies, ranging from the smallest businesses to the largest enterprises," added Stephen Ensley, Partner at Hellman & Friedman.

Transaction Details

In addition to Hellman & Friedman and Permira, the investor group includes a wholly-owned subsidiary of the Abu Dhabi Investment Authority (ADIA), and GIC.

The transaction, which has been unanimously approved by Zendesk's Board of Directors, is expected to close in the fourth quarter of this year and is subject to customary closing conditions, including Zendesk stockholder approval. Hellman & Friedman and Permira have arranged for debt and equity financing commitments for the purpose of financing the transaction. Upon closing of the transaction, Zendesk will operate as a privately-held company.

Advisors

Qatalyst Partners and Goldman Sachs & Co. LLC are serving as financial advisors to Zendesk in connection with the proposed transaction. Wachtell, Lipton, Rosen & Katz is serving as Zendesk's legal advisor.

Morgan Stanley & Co. LLC is serving as financial advisor to the investor group. Fried, Frank, Harris, Shriver & Jacobson LLP is serving as M&A counsel to the investor group and to Permira. Simpson Thacher & Bartlett LLP is serving as financing counsel to the investor group. Kirkland & Ellis LLP is serving as counsel to Hellman & Friedman.

24.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction, which fails to disclose material information.

Financial Projections

25.     The Proxy Statement fails to disclose material information regarding the Company's financial projections, including the line items underlying the financial projections.

26.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

Financial Analyses

27.     The Proxy Statement fails to disclose material information regarding the financial analyses conducted by Qatalyst Partners ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman Sachs").  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

28.     Regarding Qatalyst's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values utilized by the banker; (ii) the individual inputs and assumptions

5

underlying the discount rates and multiples utilized by the banker; (iii) the cash and cash equivalents utilized by the banker; (iv) the outstanding convertible debt utilized by the banker; (v) the net operating losses and research development tax credits utilized by the banker; and (iv) the fully diluted shares utilized by the banker.

29.     Regarding Qatalyst's Selected Transactions Analysis, the Proxy Statement fails to disclose: (i) the financial metrics for the transactions utilized by the banker; (ii) the closing dates of the transactions utilized by the banker; and (iii) the total values of the transactions utilized by the banker.

30.     Regarding Goldman Sachs' Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values utilized by the banker; (ii) the individual inputs and assumptions underlying the discount rates, perpetuity growth rates, and multiples utilized by the banker; (iii) the net cash utilized by the banker; (iv) the net operating losses utilized by the banker; and (v) the fully diluted shares utilized by the banker.

31.     Regarding Goldman Sachs' Illustrative Present Value of Future Share Price analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples utilized by the banker; (ii) the net cash utilized by the banker; and (iii) the fully diluted shares utilized by the banker.

32.     Regarding Goldman Sachs' Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the financial metrics for the transactions utilized by the banker; (ii) the closing dates of the transactions utilized by the banker; and (iii) the total values of the transactions utilized by the banker.

33.     Regarding Goldman Sachs' Precedent M&A Premia analysis, the Proxy Statement fails to disclose: (i) the transactions utilized by the banker; and (ii) the premiums paid in the

transactions utilized by the banker.

Background of the Merger

34.     The Proxy Statement fails to disclose whether Zendesk signed any  NDAs containing don't ask, don't waive provisions.

**COUNT I**

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Zendesk**

35.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Zendesk is liable as the issuer of these statements.

37.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

40.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

41.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

### COUNT II

**Claim for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Zendesk within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Zendesk and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

47.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  August 5, 2022             **GRABAR LAW OFFICE**

                            By: _____

                                Joshua H. Grabar (#5906953)
                                One Liberty Place
                                1650 Market Street, Suite 3600
                                Philadelphia, PA 19103
                                267-507-6085
                                jgrabar@grabarlaw.com

                                *Counsel for Plaintiff*